David Tresch, Pro Se Morning, Paul Falk, on behalf of the plaintiffs. Okay, due to the fact that we have three cases today, we will try to keep you within the normal time frames. So please don't just go on, because then I have to interject myself in. I don't normally, normally we let you just go, but we don't usually have three cases scheduled on the same day. So with that, you can start. Thank you. Thank you for the opportunity to present my oral arguments here today. I'd like to note that I'm not waiving issues that I don't argue today. I'm asking this appellate court to overturn a decision from the circuit court from the Honorable Judge Molroy. My appeal revolves around two issues, the statute of limitations and the amount of damages. Regarding the statute of limitations, there are three dates. One is May 1, 2012. The second one is May 22, 2012. And the third date is May 16, 2017. Discovery provided by the plaintiffs clearly show that Jason Najak discovered the fraud on May 1, 2012. Did he discover fraud, or did he discover just something that seemed to be amiss in the statements? He discovered, I would say, the latter, Your Honor. And how is it that you believe that it was fraud that he actually discovered as opposed to some, almost an anomaly? At that point, meaning at that stage, not may have come, as you say, known before or known after. Well, there had been for several months e-mails that had been generated with notifications of the payments being made. These went to Jason Najak as well as Robert Dror and the Chief Operating Officer, Kevin Merber. And in Kahn v. Deutsche Bank AG and Witherell v. Weimer, the first officer in the first moment of the fiduciary duty to discover the evidence leading to the cause of action, and therefore must cause accrual of the cause of action. Jason Najak is the, or was at that time, the firm's global network operations manager with responsibility for a multimillion-dollar budget. Go ahead. So, furthermore, plaintiffs would have been put on notice, therefore, accruing the cause of action when the first officer of the company discovered the root of the cause of action, not when a specific officer did. That is from Joyce v. Morgan Stanley. In other words, the discovery rules satisfy when the information is first uncovered rather than relying on the diligence of each individual. Plaintiffs sidestepped providing any information from Najak and provided information from Robert Dror's secondhand discovery on May 22, 2012, which is irrelevant due to Najak being the first officer that discovered this. Not only is Dror's affidavit insufficient to speak to Mr. Najak's knowledge, but it confirms that the information was available within the firm prior to May 22, 2012. Plaintiffs conceded that Najak knew of the invoices they claim accrued the cause of action when Dror learned of them because it was Najak that informed them. But knowledge of the invoices is not necessarily knowledge that they were wrongfully wrong and who did the wrong, is it? Not necessarily correct. So, therefore, the statute of limitations didn't run until they got all of that information, which was in May 22. Is that the law? Well, Jason Najak initially had worked previously for the firm that was providing those invoices, and he knew that Ennis Matter no longer had any consultants working there. So when he saw the invoice on May 1, 2012, Well, anything could have happened. It could have been from past work done, even though they've contracted. It could have been from work that was done and they're catching up. But these invoices had gone on. They were being submitted probably for about a year. So you're suggesting that there were a sufficient number of invoices that were presented to, I'm going to mess up the name, Najak, such that he should have been on notice that there was fraud? Yes, as well as Evan Merberg, the chief operating officer. Proceed. Thank you. Moving on to the damages. Thank you. All right. In the Honorable Judge Chang's transcript provided by the plaintiffs, and Judge Chang is a federal judge from the Northern District of Illinois. He is the one who presided over my criminal case. Judge Chang realized that there was no factual basis for the $4.8 million indictment. The $4.8 million was based on the alleged allegation of inflation of hourly rates, but those services were rendered at that rate, which was determined by the firm and were never challenged. The chief operating officer, Evan Merberg, considered the rates acceptable based on the December 2010 email. In Groza-Palatine Condominium Association v. Walsh, collateral estoppel is outlined and requires the issue is decided in a prior adjudication and a final judgment on the merits. The plaintiff is arguing that you, in a deposition, admitted that the damages caused were in excess of that amount, $4,000, at some point $55,500,000, and you received part of it, so it came down to $44,900,000 or so, and you admitted that. That was in my agreement with the government. And then at the sentencing of my co-defendant is where Judge Chang stated that the damages were not $4.8 million, but certainly $2.1 million. But you weren't a defendant in that case. I was. I was a co-defendant. And was that case about checks issued? It was not necessarily about the invoices, about checks. It was something different with regard to his case? No, I don't believe so. Yeah, but you admitted in the bystanders or agreed to the bystanders' report, did you not?  I actually filed a motion with the appellate court arguing against the bystanders' report. But that's too late. It had to be done before the trial judge. I filed one with the trial judge as well. And a comment about or regarding the bystanders' report, I filed a notice of appeal on August 9, 2018. Illinois Supreme Court rules allow for 28 days after that said notice to file a bystanders' report. This bystanders' report was filed more than eight months after the notice of appeal. Well, that's probably because there was no agreement on it. It was never approached between the two parties prior to my reply brief being submitted earlier this year. Go ahead. Thank you. Do you have a copy of the criminal court judge's order in the record? Yes. Is there a basis stated in there for his fining of $1.2 million? No, only in the transcripts from the sentencing hearing. Pardon me a moment, please. So the plaintiffs argued that facts in this case were like corporation, and so there can be a stop from disputing the increased damages like they were in that case. There are significant differences in the facts from corporation, one being that the amount in the criminal trial wasn't reduced because charges were dropped in a plea agreement there. My case is similar to Groves in that specific adjudications were litigated and determined by the court, myself as a party in subsequent litigation, and I challenged those facts. Is that really the distinction really that makes no difference at all? I mean, I'm not sure I follow why it's ñ I'm not sure I follow why that makes really any difference, how we get to the final disposition, whether it be by plea or whether it be by judgment by the court. What difference does it make with respect to the elements of the collateral estoppel? Well, collateral estoppel should be limited to a narrow application which fits the precise facts and issues that were clearly determined in the prior judgment in the criminal court. Does that answer your question, Your Honor? Not necessarily to agree with it, but it certainly states your position. Yes. Okay. All right. Thank you. So I think it's worth pointing out that corporation was held in the Puerto Rico District Court as not binding precedent, even if the facts were identical, which they're not, because the federal court determined that there was not $4.8 billion in damages. By comparison, Groves Appellate Time Condo Association was decided by the appellate court of the First Judicial District. Since that was the specific determination by the court in my criminal case, I'm not a stop from arguing the amount of damages because I'm not disagreeing with Judge Chang's determination. Thank you. I guess we have nothing further. I'm sorry, Your Honor? You're complete? Yes. Okay. We have nothing else to add at this point. Okay. Thank you. Thank you. If it pleases the Court, just a couple of things. You asked a question about the bystanders report. That was fully litigated in the trial court. There was a response filed by Defendant Tresch objecting to the bystanders report. Judge Mulroy took a look at it and agreed with the bystanders report and signed the order. You asked Defendant Tresch whether or not he admitted under oath in his deposition with respect to the damages. You have that bystanders report and those transcripts in front of you, and he absolutely did, in the underlying trial court case, admit the full amount of the damages that was then entered into by Judge Mulroy in the trial court. It's clear that there's two requirements. You have to have knowledge of an injury and you have to have knowledge that the injury was wrongfully caused. And in this case, when the defendant raised the statute of limitations, we went back to Mayor Brown and we drilled down deep with respect to when they first learned at all. And Mr. Tresch's affidavit is clear. The only thing that he learned on May 22nd was that there was one invoice from N.S. Monter that he thought billed for services that were done by in-house Mayor Brown employees. That's what he knew. So all he knew at that point was that there was a billing discrepancy. So at the most, he knows that there might be an injury. It's like an HVAC contractor who sends you a bill, and in the bill you're being billed for a part that you know he didn't use. It doesn't mean that the HVAC contractor is trying to defraud you. It just means that there's a billing discrepancy and you have to bring that up. Now, if this HVAC contractor did work for you for the past 10 years and you discover that in the past 10 years this HVAC contractor was billing you for parts that he didn't use in his work, well then he has not only the first prong of the discovery rule, which is knowledge of the injury, but he's got knowledge that it was wrongfully caused. Was there any requirement that there be some due diligence once you discover the discrepancy in the invoice? Is there any requirement that there be some due diligence performed under the discovery rule? We have this one invoice now that raises a question, and it's conceivably a discrepancy, but what due diligence was performed there? Well, there was a tremendous amount of due diligence, and I'll answer your specific question first. It launched an internal investigation at Mayor Brown. This was a massive, it was a classic kickback scheme, but a massive kickback scheme. It was controlled by Mr. Tresch, the inside man, the defendant Tresch, and it was facilitated by his co-conspirator at NS Mater. So NS Mater would prepare the invoices, they would send them to Mayor Brown, the defendant Tresch would approve them, and they would be paid. So it was a classic kickback, it was a classic kickback scheme. Now, to answer your question, all of the invoices were pulled. NS Mater was investigated, their background, who they were. They drilled down and people were interviewed, but this was all after that May 22nd meeting, when at most, and we're not saying that it accrued on May 22nd, we're saying that that was, we put that affidavit in because that was the first date that the appropriate person at Mayor Brown knew that there was some injury. Oh, okay, but the injury was with respect to one invoice, and it could have been a mistake, or it could have been fraud. But, so everything was opened up, there was an internal investigation, and then ultimately, much after the, ultimately Mr. Tresch was discharged, and then he was arrested and charged and he pled guilty. So I think it's clear that your question is, yes, I think there is some due diligence required, but you're talking about a very short period of time. I mean, we filed the complaint on the May 16th, you know, five years later. This meeting, this first meeting was on May 22nd. So we filed timely. The chronologies are really not in the record, because it was a pretty simple issue, very straightforward to us. We didn't know. And certainly a billing discrepancy is not going to charge Mayor Brown, you know, an organization or a corporation with some sort of knowledge that it was wrongfully caused. So does that answer your question? Okay. And so the second issue with respect to damages, that was admitted under oath. It's done. Even before you, you know, you look at the plea agreement. But in the plea agreement, that's the number he said the damages were. I think the case law is clear. I think Judge Mullroy saw that, and he said, okay, we're done. Why was he ordered to – is there anything in record to show why was he ordered to pay less in restitution? I don't know. I honestly don't know. But restitution doesn't always – I mean, restitution doesn't always match the actual damages. I don't know why, Your Honor. But I would argue to you that the two are not synonymous, you know, that I'm entitled to a civil judgment based upon the amount of legally compensable damages that the fraudulent conduct caused. The defendant, Tresh, admitted that the fraudulent conduct caused $4.8 million. End of story. But he's arguing that the criminal court judge said, I'm finding that it wasn't $4.8 million. I'm finding that it was a million point something, and that we're – that judgment collaterally stops us from increasing the amount. I may suggest this, Your Honor. You know, for purposes of sentencing, for purposes of sentencing, you know, they've got a – I don't – I'm not a criminal defense attorney, but I know that the sentencing depends in part, you know, upon the amount of money, you know, that was stolen or the amount of money that's involved. I know that – I know there's a lot of jockeying back and forth between prosecutors and defense attorneys about how much that was. So there might have been discussion of the judge during the sentencing with respect to what that number was, but there wasn't an adjudication, you know. But the plea agreement – in the plea agreement, he admits what the number was, and in his deposition, he admits under oath what the number was. And legally, you know, I want to do the fair thing here, too, but we are a nation of laws. I mean, legally, that's it. That should be the end of the story. He admits under oath that he caused $4.8 million in damages to Mayor Brown. That should be done. So with that, I'd ask that, you know, that the trial court's ruling be affirmed, and I thank you very much for your time, unless you have any more questions. No, thank you. Thank you. Judge Cheng reduced the damages, made the statement about the damages, and even at my own sentencing, he threw out the financial analysis that supported the $4.8 million because when the case first came into existence, it was claimed that the consulting firm was inflating rates versus giving Mayor Brown market rates, and that was later found not to be true, also evidenced by the e-mail from Chief Operating Officer Evan Merberg in December of 2010. And one other note I'd like to make about that is that in the corporation case, it's the plaintiff claims that merely having several charges dismissed in a plea agreement is sufficient to apply the corporation test in this case. I pled guilty on the first charge, which was $4.8 million, and Judge Cheng did reduce that. What is neglected in the court's reasoning on corporation is that their test is fair and applicable only when the dismissal of criminal charges was the cause of the reduction in damages. That was not the case in my case. It was a reduction due to there was no inflation of rates. Mayor Brown did concede that they were paying the hourly rates, not inflated rates. They were paying market rates. And Judge Cheng's ruling was, or his determination was, that the damages were what? Actually, the money that was paid to me directly. The money that was paid to you as opposed to the damage caused by the corporation. I'm sorry, Your Honor? Is there a difference between the money that was paid to you and the damage that was caused to the company? Well, Judge Cheng said that the damages were $2.1 million, which is what was paid to me, not the $4.8. Are you done? Yes, I'm finished. All right, thank you. Thank you both for your time. All right, thank you. Thank you.